HAMITER, Justice.
Plaintiff, Paul F. O’Brien, brought this suit in which he attacked the sale of standing timber made by him to the defendant, A. N. LeGette, d/b/a A. N. LeGette Lumber Company, on the ground of lesion.
In his original petition plaintiff set forth that he sold the property to the defendant on October 27, 1965 for $12,800. He further alleged that at such time it was worth $34,500. He prayed that the sale be annulled, or that the defendant be ordered to' elect to keep the timber upon paying the difference between the purchase price and the mentioned value.
Thereafter, plaintiff filed an amended petition alleging that on January 8, 1966 LeGette sold the property to the American Box Company for a consideration of $30,-000, and in which it was made a party to the suit. Plaintiff prayed for a judgment against both defendants decreeing the nullity of his sale to LeGette, or, alternatively, for a judgment of $21,700 against the latter.
On a motion for a summary judgment the suit against the American Box Company was dismissed, and it is no longer a party to this litigation.
An exception of no cause of action which LeGette filed was maintained by the district court, and the judgment was affirmed by the Court of Appeal. 211 So.2d 427. The exception was based on the ground that after ownership of the property passed into the hands of a third party the plea of lesion was no longer available to the vendor.
We granted certiorari at the instance of plaintiff. 252 La. 879, 214 So.2d 549.
The principal issue to be determined here is whether plaintiff’s action on the ground of lesion abated when the original *255 vendee sold the timber to a third person. (There are, incidentally, no allegations of fraud, bad faith or collusion on the part of •either of the vendees.)
The defendant relies on Article 2589 of the Revised Civil Code of Louisiana, he showing that the only right given there to the vendor in case of lesion is the “right to demand the rescission of the sale.” And he points out that under our Civil Code Article 2591 it is at the option of the vendee only to restore the thing or to make up the just price and keep the property. But, he says that, since it is conceded that the vendor cannot obtain a rescission against the third party vendee and it is impossible for him to restore the property, the only action available to plaintiff has abated because the law does not give him an independent right for supplementing the price. He cites Copley v. Flint and Cox, 16 La. 380, Smart v. Bibbins, 109 La. 986, 34 So. 49, and Morgan v. O’Bannon and Julien et al., 125 La. 367, 51 So. 293.
The plaintiff, on the other hand, contends that, even though the original vendee has alienated the property, the vendor still has an action against such vendee under the lesion provisions of our Civil Code; but that a judgment can be rendered in his favor only for the difference between the sale price and the just price. He urges that in selling the timber the original vendee has lost the option either to rescind the sale or to make up the just price; and that he has no alternative but to pursue the latter course. He cites Snoddy v. Brashear et ux., 3 La.Ann. 569 and 13 La.Ann. 469, Smith v. Huie-Hodge Lumber Company, 129 La. 28, 55 So. 698, and Beatty v. Vining, 126 So.2d 846, 147 So.2d 37 (Court of Appeal).
Among the cases relied on by both .parties, only one, Snoddy v. Brashear, supra, has any pertinency here. However, in that case the court was primarily concerned with the right of the plaintiff to seek a rescission of a sale against a second vendee, and whether she was in fact a third party. Although it rendered a money judgment against the original vendee this was done without any discussion of the issue involved in this cause.
The court in the Snoddy opinions has, nevertheless, pointed out an important distinction between our Civil Code articles and those of the Code Napoleon. It observed that prior to the adoption of the latter there was a division of opinion among the French writers as to whether or not the action for rescission on account of lesion was personal to the original vendee, or whether it would also lie against a second vendee; but it said that the courts had allowed the action against third parties. And it showed that the second paragraph of Article 1681 of the Code Napoleon (the forerunner of- our Article 2591) implied -the maintaining of that jurisprudence in the new system; but that such paragraph *257 had been intentionally omitted from our Code, the purpose of the omission being to restrict the action to the first vendee. From this it is seen that the problem presently before us did not arise in France, because if the property had been sold by the original purchaser the vendor simply pursued his right of rescission against the second or subsequent vendee.
The mentioned problem is created in Louisiana by our Code’s denying the right to a vendor to annul the sale against a third party purchaser, without at the same time providing specifically for the effect of such a second sale insofar as the first vendee is concerned. That is, our codal provisions do not restrict the action against the first purchaser to the time when he still owns the property, which would result in the abating of the action when it is sold a second time. Yet, neither do they expressly give the vendor the right to sue the original vendee to make up the just price (instead of for a rescission) if the latter has alienated it.
In view of the purpose of the articles permitting the rescission of sales on account of lesion, — that is, to protect the vendor who (because of error, necessity or imposition) has transferred his ownership of property at a price far out of proportion to its true value — we do not believe that it was the intention of the framers of our Code, when refusing such a vendor a right against a third party purchaser, to deny him any remedy whatsoever, merely because the vendee sells the property. To so hold would, we think, make it so easy to avoid the consequences of a tainted sale as to destroy almost entirely the purpose to be served by the articles dealing with lesion.
Nevertheless, in considering the effect of a subsequent sale by the original purchaser, we must take into account the provisions of Article 2597 of the Revised Civil Code of Louisiana (not found in the Code Napoleon) which read: “The seller who demands the rescission on account of lesion beyond moiety, must resume the possession of the thing, in the state in which it is.
“The buyer, in this case, is not bound for the injury sustained through his fault before the demand. He is only bound to make reimbursement for such injuries as he has turned to his own profit.”
Under this article, when the vendee is unable to restore the property in its original condition, he is required to reimburse the vendor only “for such injuries as he has turned to his own profit.” Clearly, then, if the vendee (before demand) has caused or permitted some or all of the property to be alienated, or has otherwise made it. impossible to restore it to the vendor, he is liable to the latter to the extent that he has profited from such action.
We do not believe that the purchaser who, in effect, removes the entire immovable from the possibility of restoration *259 to the vendor should be in any worse position than the vendee who has merely removed a part of it. Therefore, in an action based on lesion, when it appears that it is impossible for the original vendee to restore any of the property because it has been sold in its entirety, the vendor is entitled to be reimbursed for the profit the vendee has realized.
We have carefully examined all of the cases cited by the litigants herein. As we have said, only one is really pertinent. In fact, there is language in several of them which might be of benefit to one or the other of the parties hereto; and the reasoning in some appears to be somewhat in conflict with the reasoning of others. Albeit, we believe that the conclusion reached hereinabove is the correct one, and anything contained in the previous cases in conflict herewith is now specifically rejected.
We conclude, therefore, that the Court of Appeal and the district court erred in maintaining the exception of no cause of action filed herein. And inasmuch as the case was heard only on such exception the record before us contains no evidence as to the profit derived by this defendant. Consequently, we will have to remand the case for a trial on the merits, particularly for the purpose of determining such item of profit.
For the reasons assigned the judgment of the Court of Appeal is reversed and set aside, the exception of no cause of action is overruled, and the case is remanded to the district court for a trial on the merits in accordance with law and consistent with the views herein expressed. All costs incurred in connection with such exception shall be paid by the defendant. All others shall await the final disposition of the litigation.
SANDERS, J., concurs in part and dissents in part with written reasons. SUMMERS, J., concurs in part and dissents in part with written reasons.